IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHEENA ROBINSON, individually and as the Administratrix of the Estate of Rodney Keith Robinson, II,<br><br>      Plaintiff,<br>v.<br><br>PATROLMAN DYLAN EBKE, INDIVIDUALLY, and TOWN OF DEWEY BEACH<br><br>      Defendants. | C.A. No. 23-308-JLH-SRF |
| SHEENA ROBINSON, individually and as the Administratrix of the Estate of Rodney Keith Robinson, II,<br><br>      Plaintiff,<br>v.<br><br>OFFICER JOHN RHODES, individually, TOWN OF DEWEY BEACH, JOHN DOE #1, JOHN DOE #2 and 2009 LLC d/b/a THE STARBOARD<br><br>      Defendants. | C.A. No. 24-347-JLH-SRF |

## REPORT AND RECOMMENDATION[1]

Presently before the court in these related cases alleging wrongful death and violations of civil rights under 42 U.S.C. §§ 1983 and 1988, are the following motions: (1) a motion to consolidate pursuant to Federal Rule of Civil Procedure 42(a) filed by Plaintiff, Sheena Robinson, individually and as the Administratrix of the Estate of Rodney Keith Robinson, II,

---

[1] Civil Action No. 23-308-JLH-SRF, will hereinafter be referred to as "*Robinson I*" and Civil Action No. 24-347-JLH-SRF, will hereinafter be referred to as "*Robinson II*." All citations to docket entries refer to the docket in *Robinson II*, unless otherwise noted.

("Plaintiff") (D.I. 34); and (2) a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), filed by Defendants, John Doe #1, John Doe #2, and 2009 LLC d/b/a The Starboard (collectively, the "Starboard Defendants"). (D.I. 25)

For the following reasons, I recommend that the court **GRANT** the Starboard Defendants' motion to dismiss. Plaintiff's motion to consolidate is also **GRANTED**.[1]

## I. BACKGROUND[2]

### A. Factual Background

On or about March 18, 2022, through the early morning of March 19, 2022, Rodney Keith Robinson, II ("Decedent") was a patron at The Starboard Restaurant and Bar (the "Starboard"), a popular location in Dewey Beach, Delaware. (D.I. 20 at ¶ 19) On March 18, 2022, Decedent and a friend traveled from Milford, Delaware, to Dewey Beach to attend the Starboard's opening night for the 2022 season. (*Id.* at ¶ 23) While Decedent was leaving the Starboard, in the early morning hours of March 19, 2022, a bouncer of the Starboard referred to as "John Doe #1" alerted a member of the Dewey Beach Police Department ("DBPD") that Decedent was in possession of a gun. (*Id.* at ¶¶ 11, 24)

Plaintiff alleges that Decedent ". . .was an African American male in a largely white crowd who may have been carrying a firearm." (D.I. 20 at ¶¶ 24, 26) Plaintiff further alleges that the DBPD, tasked with patrolling the town had a reputation for use of excessive force and

---

[1] Motions to consolidate under Federal Rule of Civil Procedure 42 are non-dispositive. *See Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 343 (N.D.N.Y.2001) (motion for consolidation is one for "non-dispositive relief"); *see also Bergman v. City of Atlantic City*, 860 F.2d 560, 563 (3d Cir.1988) (leaving undisturbed on appeal magistrate judge's order "consolidat[ing actions] for all purposes of discovery and trial"). Consequently, the court's ruling on Plaintiff's motion to consolidate is governed by 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2).

[2] The facts here are incorporated from the first amended complaint ("FAC") in *Robinson II* (D.I. 20), which the court views in the light most favorable to the plaintiff on a motion to dismiss. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790–91 (3d Cir. 2016).

that the DBPD had been accused of violating the Fourth and Fourteenth Amendment rights of its citizens in seven lawsuits which had been filed between 2004 and 2022. (*Id.* at ¶ 31) Plaintiff further alleges that the DBPD had a custom of writing tickets, encouraging officers to be aggressive, and choosing not to wear body cameras. (*Id.* at ¶¶ 38–43) Plaintiff further alleges that the DBPD, and by extension, the Starboard Defendants, were aware that DBPD officers were trained to be overly-aggressive, condoned officers' illegal and unconstitutional use of excessive force, and escalated rather than de-escalated encounters with the public. (*Id.* at ¶¶ 81–83, 86–88, 90, 94–96, 98)

When DBPD officers first approached Decedent, he fled from the scene and eluded the officers. (*Id.* at ¶ 25) Plaintiff alleges that over an hour later, Decedent returned to the area of the Starboard intending to meet someone to drive him back to Milford. (*Id.* at ¶ 26) At that time, another bouncer/night manager at the Starboard, John Doe #2, encountered Decedent, recognized him, and again contacted the DBPD. (*Id.* at ¶¶ 12, 16)

After being informed of Decedent's return to the area, two DBPD officers, Rhodes, and Ebke, approached Decedent. (D.I. 20 at ¶ 27) Upon the Officers' approach, Decedent fled again, crossing Saulsbury Street, and entering an alleyway behind Izzy Plaza, which was across from the Starboard. (*Id.*) In the alleyway of Izzy Plaza, Decedent encountered a fence blocking his exit and a confrontation between Decedent and the DBPD officers ensued. (*Id.* at ¶¶ 27–28) Defendant Rhodes initially deployed a taser and sometime thereafter, Defendant Ebke discharged his service weapon once, fatally shooting Decedent. (*Id.* at ¶ 29) After both weapons were discharged, the DBPD officers exited the alleyway to the front of Izzy Plaza. (*Id.*) Decedent fled back across Saulsbury Street and was later found dead from a gunshot wound in an area behind the Starboard. (*Id.* at ¶ 30)

## B. Procedural History

On March 20, 2023, Plaintiff filed *Robinson I* alleging Defendants, Dylan Ebke ("Ebke") and the Town of Dewey Beach ("Dewey Beach"), violated Decedent's rights under the Fourth Amendment of the United States Constitution and Article I § 6 of the Delaware Constitution by using excessive force. (*Robinson I*, D.I. 1) The parties conducted written discovery and extended the deadline to add parties and amend the pleadings to February 29, 2024. (*Robinson I*, D.I. 31) Plaintiff did not file an amendment within the deadline. Plaintiff stated that she "needed a short extension of that deadline until March 19, [2024] but Defendant Ebke or Dewey Beach would not agree to an extension of the deadline or to allow Plaintiff to add/amend her Complaint." (*Robinson I*, D.I. 34 at ¶ 7)

Unable to obtain an extension for adding parties or claims in *Robinson I* prior to expiration of the statute of limitations, the Plaintiff resorted to filing a new suit on March 18, 2024. (*Robinson I*, D.I. 34 at ¶ 8) The new lawsuit, *Robinson II*, added Officer John Rhodes ("Rhodes"), John Doe #1, John Doe #2, and 2009 LLC, and additional claims arising solely under Delaware law against the Starboard Defendants. (D.I. 1)

Subsequently, the scheduling order in *Robinson I* was vacated by consent on April 29, 2024. (*Robinson I*, D.I. 33) Plaintiff filed the instant motion to consolidate on May 13, 2024. (D.I. 10; *Robinson I*, D.I. 34) An opposition was filed on May 28, 2024, by Defendants Ebke and Dewey Beach. (D.I 13; *Robinson I*, D.I. 35) Defendants, John Doe #1, John Doe #2, and 2009 LLC d/b/a The Starboard ("Starboard") joined in the motion to consolidate on May 28, 2024. (D.I. 14; *Robinson I*, D.I. 36)

On June 3, 2024, the Starboard Defendants filed a motion to dismiss in *Robinson II*. (D.I. 15) On June 11, 2024, Defendants Rhodes and Dewey Beach moved for dismissal. (D.I. 18) On June 23, 2024, Plaintiff filed the FAC in *Robinson II*, mooting both motions. (D.I. 20) On

4

August 9, 2024, Defendants Rhodes and Dewey Beach filed an answer and crossclaim in *Robinson II*. (D.I. 24) On the same day, the Starboard Defendants renewed their motion to dismiss. (D.I. 25) Both *Robinson I* and *Robinson II* were referred to the undersigned Magistrate Judge to conduct all matters up to and including summary judgment on January 8, 2025. (D.I. 41)

The FAC alleges claims against the Starboard for premises liability and vicarious liability for the conduct of the Doe Defendants under the doctrine of *respondeat superior* (Counts VI and XIII), and against the Doe Defendants for negligence (Counts VII and VIII), negligent infliction of emotional distress (Counts IX and X) and intentional infliction of emotional distress (Counts XI and XII). Both sides agree that Delaware law applies to these claims. (*See* D.I. 20; D.I. 26 at 5)

## II.   LEGAL STANDARD

### A. Failure to State a Claim

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To state a claim pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In assessing the plausibility of a claim, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A claim is facially

plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

**B. Motion to Consolidate**

Pursuant to Federal Rule of Civil Procedure 42(a), courts have the authority to consolidate actions involving a common question of law or fact. Fed. R. Civ. P. 42(a); *see also Oracle Corp. v. epicRealm Licensing, L.P.*, C.A. No. 06-414-SLR, 2007 WL 901543, at *5 (D. Del. Mar. 26, 2007). While decisions to consolidate are discretionary, the court should "balance considerations of efficiency, expense, and fairness." *Resnik v. Woertz*, 774 F. Supp. 2d 614, 624 (D. Del. 2011) (citing *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 142–43 (D. Del. 1999)). The court must weigh "the savings of time and effort gained through consolidation . . . against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions." *Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 196–97 (D. Del. 2012) (citing *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991)).

## III. DISCUSSION

### A. Starboard Defendants' Motion to Dismiss

The Starboard Defendants move for dismissal of all claims asserted against them. (D.I. 26 at 5–6) Plaintiff is suing the Starboard and two of its employees for contacting the police about a patron leaving the premises who they believed was armed with a gun. (D.I. 20 at ¶¶ 24, 26) Plaintiff seeks to hold the Starboard Defendants responsible for the fatal injuries the Decedent sustained while on another's property across from the Starboard following his pursuit by the responding police officers. (*Id.*) According to the Plaintiff, the Starboard Defendants knew or should have known the officers had a reputation for using excessive force and, thus, should be held liable for his death. (D.I. 28 at 7–8) The Starboard Defendants deny that any duty of care is owed to the Decedent under Delaware law nor did their actions or inactions cause injury to the Decedent while he was on another's property when he was involved in a confrontation with police following his flight and pursuit by DBPD officers. (D.I. 26 at 5)

#### 1. Superseding and/or Intervening Cause

The Starboard Defendants move to dismiss all claims against them on the basis that the proximate cause of Plaintiff's damages was the Decedent's act of fleeing from the police and/or the conduct of the co-defendant police officers in tasing and fatally shooting the Decedent. (D.I. 26 at 5–6) Therefore, even if the Starboard Defendants arguably owed a duty of care to the Decedent, they cannot be held liable as a matter of law for injuries and death proximately caused by the intervening and superseding acts of the Decedent and/or co-defendants. (*Id.* at 6)

Plaintiff contends that the Starboard Defendants' motion should be denied because their reliance on intervening and superseding acts that break the chain of causation is an affirmative defense on which they bear the burden of proof. (D.I. 28 at 5–9) Moreover, Plaintiff argues that the proximate cause of Decedent's injuries and death is a factual inquiry that cannot be resolved

7

on a motion to dismiss and, at this stage, the factual allegations in the FAC and all reasonable inferences from them must be viewed in the light most favorable to the Plaintiff. (*Id.*)

For an intervening and superseding act to break the chain of causation, it must be foreseeable. *Phifer v. Du Pont Country Club, Inc.*, 138 F. App'x 446, 448–49 (3d Cir. 2005). That is, the Starboard Defendants should have recognized the risk that the police officers, responding to their report of an individual Defendants suspected was armed, would subsequently engage in the use of excessive force against that individual, causing fatal injuries. While issues of proximate causation are generally reserved for the factfinder, the facts of the instant case fail to demonstrate that the Starboard Defendants could have reasonably been expected to foresee that calling the police about a suspected armed individual would result in the individual's fatal injuries at the hands of law enforcement.

The court finds the facts of the instant case are analogous to those in *Wright v. Whitehall Twp.*, on which the Starboard Defendants rely. *Wright* involved a school athletic director's command to a police officer on duty at a school basketball game to remove a student who had allegedly disrespected the director. *Wright v. Whitehall Twp.*, 2021 WL 100091, at *1 (E.D. Pa. Jan. 12, 2021). Other police officers joined in the effort to remove the student along with other students in his group. *Id.* at *2. Two of the other students in the group were allegedly injured during the resulting melee with police. *Id.* The injured students brought substantive due process claims against the director and the school district defendants under the "state-created danger doctrine." *Id.*

The *Wright* court granted the school district defendants' motion to dismiss because the plaintiffs could not satisfy certain elements of the state-created danger doctrine, such as the first element requiring that "the harm ultimately caused to the plaintiff was foreseeable and fairly direct." *Id.* at *9. Namely, the complaint did not plausibly support liability under the doctrine

8

because it was not foreseeable that the athletic supervisor's directives to have the disrespectful student removed from the gym would lead to a great risk of two other students suffering serious harm at the hands of the police. *Id.* at *18. The court held, "[s]imply put, the harm suffered by [the students] as alleged is attributable to the acts of the Defendant police officers. [Athletic Director] had no involvement in those acts, and he could not have been expected to foresee that attempting to exercise his authority as athletic director over a group of students by way of a directive to an on-site police officer would lead to [the students] suffering harm at the hands of that officer and others." *Wright*, 2021 WL 100091, at *11.

Similarly, in the instant case, the Starboard Defendants could not have been expected to foresee that contacting the police would lead to the Decedent suffering fatal injuries at the hands of the responding officers. While the Starboard Defendants could be expected to foresee that law enforcement would investigate their report, they could not reasonably be expected to foresee how the police would conduct themselves in a subsequent encounter with the suspected armed individual nor the outcome that resulted.

Even assuming, arguendo, that the issue of the foreseeability of an intervening and superseding act is a question for the factfinder, the court recommends granting the Starboard Defendants' motion because the FAC fails to state a claim for relief under all counts asserted against the moving Defendants for the reasons discussed in the following sections.

### 2. Premises Liability – 2009 LLC – Count VI

The Starboard argues five grounds upon which the Plaintiff's premises liability claim should be dismissed. First, Starboard argues that the actual injury to Decedent did not occur on Starboard property. (D.I. 26 at 8–9) Second, the Plaintiff does not and cannot point to any unreasonable condition on Starboard's premises that resulted in Decedent's injuries. (*Id.* at 9–11) Third, the alleged propensity of the DBPD to use excessive force does not amount to a

9

dangerous condition on its premises for which the Starboard owed a duty to warn. (*Id*. at 11–12) Fourth, the pleading fails to plausibly allege that the Starboard was in a better position than the Plaintiff to recognize the danger posed by the DBPD. (*Id*. at 12–13) Fifth, the Starboard provided safe ingress and egress to the property and the off-premises injuries sustained by Decedent had no direct relationship to ingress or egress from Starboard's premises. (*Id*. at 13–14)

Plaintiff argues that the Starboard was aware or should have been aware of the propensity of the DBPD to use excessive force and that Decedent's death was a foreseeable consequence of their employees' actions in notifying DBPD that Decedent was in possession of a gun. (D.I. 28 at 17)

Under Delaware law a party asserting a claim under a theory of premises liability must demonstrate that:

> (1) the injuries were caused by an unreasonably dangerous condition on the premises, (2) which the owner knew about or with the exercise of reasonable care would have known about,(3) which the invitee would not be expected to discover for himself, and (4) the owner failed to use reasonable care to protect the invitee against the danger.

*Shinners v. K-Mart Corp.*, 847 F. Supp. 31, 33 (D. Del. 1994) (citing *Callaway v. Scrivner*, 1991 WL 113437, at *3 (Del. Super. Ct. 1991)).

*Jardel Co. v. Hughes* is the seminal case in Delaware imposing liability on a business owner for injuries suffered by a business invitee that resulted from the criminal conduct of third parties. 523 A.2d 518 (Del. 1987). In *Jardel* the Delaware Supreme Court held that the owner of a shopping mall owed a duty of care to an employee of a mall tenant who was violently assaulted in the mall parking lot. *Id*. at 525. The mall owner was aware of criminal activity in the parking lot and had undertaken security responsibilities for it. *Id*. The court found that the foregoing circumstances created an obligation of reasonable care on the part of the mall owner to

protect business invitees from the acts of third persons while nonetheless explaining that " a property owner is no more an insurer or guarantor of public safety than are police agencies[.]" *Id.* Moreover, the court in *Jardel* acknowledged that ". . .the primary responsibility for public safety lies with the government, not the private sector, and the law should not create a cause of action against a private citizen based on governmental default." *Id.* Here, the Plaintiff seeks to create such a cause of action against the Starboard Defendants based on the DBPD's alleged improper conduct in performing its public safety responsibilities. Such a cause of action has not been adopted under *Jardel*.

More recently, in *Rhudy v. Bottlecaps Inc.*, the Delaware Supreme Court determined that a business owner owed no duty to patrons who suffered death and serious injury from a criminal assault that occurred in a public parking lot utilized by patrons of the business, holding the business owner had no duty to either warn its business invitees about the criminal activity or protect them from crime on the lot. *Rhudy v. Bottlecaps*, Inc., 830 A.2d 402 (Del. 2003). The court held that ". . . Bottlecaps owed no duty to warn its patrons of criminal activity that was no more foreseeable on the Lot than any other criminal activity that occurred in the surrounding area." *Id.* at 406. Furthermore, the court held "[t]his court cannot impose on Bottlecaps a duty to protect the plaintiffs from an assailant while they were on another's property on which neither Bottlecaps actions nor its inactions were responsible for the robbery and murder." *Id.* at 408.

In *Rhudy*, the Delaware Supreme Court distinguished its decision in *Wilmington Country Club v. Cowee,* which upheld a jury verdict against the Country Club for breaching its duty of care by failing to erect traffic-control devices or lights to prevent an accident that occurred when a club patron was struck by an automobile while exiting the club onto a public highway. 747 A.2d 1087, 1090 (Del. 2000). The court ruled the Country Club could have taken precautions at the exit of its own property to alert patrons as they approached a busy road, thus, minimizing the

11

foreseeable risk that an accident would occur. *Id.* The court in *Rhudy* found that Bottlecaps could not be expected to take precautions to prevent criminal incidents on property it neither owned nor controlled. *Rhudy*, 830 A.2d at 406. Furthermore, the court held Bottlecaps owed no duty to warn its patrons of criminal activity that was no more foreseeable on the parking lot than anywhere else in the surrounding area. *Id.*

It is not alleged by the Plaintiffs that the Starboard owned or controlled the alleyway of Izzy Plaza nor did the Decedent's encounter with the Defendant Officers take place on Starboard property. (D.I. 20 at ¶¶ 27–30) Based upon controlling Delaware authority in *Rhudy*, the court recommends that the Starboard owed no duty to warn a patron it suspected of being armed about excessive use of force by police that was no more foreseeable in a public alleyway across the street than any other law enforcement conduct occurring in the surrounding area.

Plaintiff attempts to distinguish *Rhudy* by arguing that the Starboard knew or should have known they were placing their patron in the "lion's den" when they contacted the DBPD. (D.I. 28 at 18) In other words, Plaintiff argues that because Starboard contacted the DBPD it breached a duty owed to the Decedent as a business invitee. Plaintiff cites no precedent under Delaware law, or any other jurisdiction, for her novel premises liability theory that a business owner owes a duty to warn a suspected armed patron or protect that patron from the danger, off premises or in the surrounding area, posed by police officers who allegedly use excessive force when policing.

Accordingly, the court recommends that the premises liability count against 2009 LLC, be **DISMISSED** with prejudice because amendment would be futile.

### 3. Negligence Claims against John Doe #1 and #2 – Counts VII – VIII

A plaintiff asserting a cause of action for negligence must assert four elements: a duty owed by defendant to plaintiff, a breach of that duty, proximate cause, and damages from the

12

breach. *Roache v. Charney*, 38 A.3d 281, 286 (Del. 2012). A Plaintiff must show that each defendant was under a legal obligation or duty to protect the Plaintiff from the risks which led to the injury. *Roberts v. Delmarva Power & Light Co.*, 2 A.3d 131, 136 (Del. Super. Ct. 2009). Whether a duty exists is a question of law to be decided by the trial judge. *Butler v. Newark Country Club, Inc.*, 2005 WL 2158637, at *3 (Del. Super. Ct. Aug. 29, 2005).

The Starboard Defendants argue that Starboard employees, John Doe #1, and John Doe #2 did not owe a duty of care to an individual they suspected was armed with a gun nor did they act unreasonably in contacting the police about him. (D.I. 26 at 14–15)

Plaintiff argues that Does #1 and #2 acted negligently when they reported Decedent to DBPD, placing him in harm's way. (D.I. 28 at 10) Plaintiff states in support of the affirmative act claim that: "In the case of misfeasance, the party who 'does an affirmative act' owes a general duty to others 'to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the [affirmative] act.'" (*Id.*) Plaintiff further argues that Decedent's injuries were a reasonably foreseeable risk of the Doe Defendants' "affirmative act" of reporting Decedent to DBPD, stating: "[t]herefore, when Does 1 and 2 affirmatively contacted the DBPD about Keith [Decedent] having a gun, they failed to exercise reasonable care to prevent an unreasonable risk of harm to Keith in light of what Does 1 and 2 knew or should have known about the DPBD." (*Id.* at 11) Plaintiff cites no authority to support such a duty of care based on the facts of the instant case.

Whether a private citizen may be found negligent for reporting someone to the police appears to be a matter of first impression under Delaware law. The Starboard Defendants cite to authorities from appellate courts in Michigan and Florida holding that a private citizen, acting in good faith, owed no duty to the party they reported to the police. (D.I. 30 at 5) *Nrecaj* involved a situation in which a storeowner suspected a customer was armed and called the police. *Nrecaj*

*v. Yono*, 434 N.W.2d 210, 211 (Mich. Ct. App. 1988) ("When a person perceives himself to be in a potentially dangerous situation, he acts consistent with the principles of a civilized society by summoning those who are appointed to investigate such matters and acting upon their judgment"). *Pokorny* involved a bank employee's report to law enforcement of an attempted robbery that resulted in the arrest and detention of the two speech and hearing-impaired plaintiffs mistaken for bank robbers. *Pokorny v. First Fed. Sav. & Loan Ass'n of Largo*, 382 So. 2d 678, 682 (Fla. 1980). The court held, under Florida law, that a private citizen may not be held liable in tort for making an honest, good faith mistake in reporting someone to the police resulting in that person's arrest. *Id.* at 682. The rationale for the court's decision is the public policy of encouraging private citizens to assist law enforcement by reporting suspected criminal conduct. *Id.*

Here the Plaintiff is, in effect, asking this court to broadly expand the duty of care, thus, requiring a private citizen to weigh the probability of whether reporting a suspected armed individual to the police will result in harm to that individual at the hands of police.

Accordingly, in the absence of any precedent under Delaware law establishing any such duty of care, the court recommends Plaintiff's claims against John Doe #1 and #2 for negligence be **DISMISSED** with prejudice, as amendment would be futile.

### 4. Negligent Infliction of Emotional Distress Claims against John Doe #1 and #2 – Counts IX – X

The Doe Defendants move to dismiss Plaintiff's claims for negligent infliction of emotional distress ("NIED") against John Doe #1 and John Doe #2. The Doe Defendants argue that Plaintiff's allegation that they should have known of the reputation of the DBPD, and therefore, when they contacted the police, they negligently caused Decedent fright, fails to state a claim for NIED as a matter of law. (D.I. 26 at 16–17) Plaintiff admits that the NIED claims are

asserted on behalf of Decedent and are not claims she asserts individually on her own behalf. (D.I. 28 at 11)

There are three elements to an NIED claim: (1) negligence causing fright to the plaintiff; (2) the plaintiff was within the "zone of danger"; and (3) the plaintiff suffered physical harm as a result. *Spence v. Cherian*, 135 A.3d 1282, 1289–90 (Del. Super. Ct. 2016), *as corrected* (May 25, 2016). To assert an NIED claim, "plaintiff must be in the actual zone of danger, and have actual physical injury caused by the immediate observance of the negligent activity." *Snavely ex rel. Snavely v. Wilmington Med. Ctr., Inc.*, 1985 WL 552277, at *1 (Del. Super. Ct. Mar. 18, 1985).

The FAC alleges the Doe Defendants reported Decedent to the DBPD, but it was "its officers which caused Keith fright, which is evidenced by the fact he fled." (D.I. 20 at ¶¶ 103, 109) There are no allegations in the FAC that the Doe Defendants themselves negligently caused fright to the Decedent.

Plaintiff fails to cite any authority to support a theory that the Doe Defendants may be held vicariously liable for any alleged negligence of the police officers in causing fright to the Decedent. Accordingly, the court recommends Plaintiff's negligent infliction of emotional distress claims against John Doe #1 and #2 be **DISMISSED** with prejudice, as amendment is futile.

### 5. Intentional Infliction of Emotional Distress Claims against John Doe #1 and #2 – Counts XI – XII

Delaware Courts have adopted Restatement of Torts § 46 in addressing intentional infliction of emotional distress ("IIED") claims. *Spence*, 135 A.3d at 1288–89. According to the Restatement, an IIED claim arises when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for

such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Id.* at 1289 (quoting *Fanean v. Rite Aid Corp. of Delaware,* 984 A.2d 812, 818 (Del. Super. Ct. 2009)). Extreme and outrageous conduct is that which "exceeds the bounds of decency and is regarded as intolerable in a civilized community." *Id.* (citation omitted).

Plaintiff states that liability for IIED exists because: "[a] reasonable inference from the Amended Complaint is that Does 1 and 2 racially profiled [Decedent], which is what prompted them to contact the DBPD as [Decedent] was leaving the Starboard. In 2022, this was extreme and outrageous conduct." (D.I. 28 at 12)

Plaintiff fails to address the elements of an IIED claim and how these elements are satisfied by the allegations of the FAC. The FAC alleges that each Doe Defendant's ". . . intentional act of reporting Keith to the DBPD and/or its' officers was an outrageous act." (D.I. 20 at ¶¶ 115, 120) The FAC makes no allegations that Decedent was ever aware of whether he was allegedly profiled by the Defendants. There are no allegations in the FAC that the Doe Defendants engaged in any conduct with Plaintiff or the Decedent that intentionally or recklessly caused severe emotional distress to either the Plaintiff or the Decedent. Plaintiff fails to provide any authority that the Doe Defendants are vicariously liable for the alleged intentional or reckless conduct of the police officers causing severe emotional distress to the Decedent.

Accordingly, the court recommends Plaintiff's intentional infliction of emotional distress claims against John Doe #1 and #2 be **DISMISSED** with prejudice, as amendment is futile.

### 6. *Respondeat Superior* – 2009 LLC – Count XIII

The FAC alleges that the Doe Defendants were at all relevant times employees of the Starboard and acting within the course and scope of their employment. (D.I. 26 at 20; D.I. 28 at 15) Therefore, the Starboard is vicariously liable for all causes of action for which the Doe Defendants are found liable. Because the court recommends dismissing with prejudice all counts

alleged against the Doe Defendants, this count based upon the doctrine of *respondeat superior* should be **DISMISSED** as moot.

### B. Plaintiff's Motion to Consolidate

Plaintiff moves to consolidate *Robinson I* and *Robinson II* because common questions of law and fact predominate both cases. (*Robinson I*, D.I. 34 at ¶ 12) In response, Defendants Dylan Ebke, and Dewey Beach of Dewey Beach (collectively, "*Robinson I* Defendants")[2] allege that in addition to adding the new parties, Plaintiff added new theories of liability. (*Robinson I*, D.I. 35 at ¶¶ 4–5) The *Robinson I* Defendants state that after written discovery was nearly complete, they stipulated to extend the deadline sixty (60) days giving Plaintiff sufficient time to amend *Robinson I* to add additional defendants based upon any newly discovered information. (*Id.* at ¶ 4) Plaintiff readily admits that because the parties would not stipulate to a second extension that she filed *Robinson II* to preserve her claims within the statute of limitations. (*Robinson I*, D.I. 34 at ¶ 8)

As a general matter, courts within the Third Circuit discourage parties from filing a new action as an end run around a bar date for amending the pleading:

> [T]he Third Circuit has strongly cautioned that a district court must "carefully [e]nsure[] that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed. In particular, the court must [e]nsure that the plaintiff does not use the incorrect procedure of filing duplicative complaints" for the purpose of circumventing the rules pertaining to the amendment of complaints.

*See Boston Sci. Scimed, Inc. v. Edwards Lifesciences Corp.*, 2018 WL 6040261, at *2 (D. Del. Nov. 9, 2018) (quoting *Prewitt v. Walgreens Co.*, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013)); *see also Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977)).

---

[2] The Starboard Defendants filed a joinder in the *Robinson I* Defendant's motion to deny consolidation. (*Robinson I*, D.I. 36)

17

Plaintiff concedes that *Robinson II* was filed to circumvent the expiration of the deadline for amendments to which the parties had stipulated and to avoid the expiration of the statute of limitations for adding claims and parties. (*Robinson I*, D.I. 34 at ¶ 8) Even after the time to amend was extended by more than a month, to February 29, 2024, Plaintiff's failure to timely amend her complaint remains unclear. Nineteen days later, Plaintiff filed *Robinson II*.

On balance, because of the common questions of law and fact and in the exercise of judicial discretion, the court finds that consolidating *Robinson I* and *Robinson II* is appropriate under Rule 42(a). Having recommended dismissal of the Starboard Defendants, the court finds it will promote judicial efficiency for the cases to proceed jointly against the two police officers involved in the incident with the Decedent. Consolidation will not likely result in unreasonable delay in the progress of discovery and trial preparation. *See Borough of Olyphant v. PPL Corp.*, 153 F. App'x 80, 82 (3d Cir. 2005). Accordingly, Plaintiff's motion to consolidate is **GRANTED**.

## IV. CONCLUSION

Based upon the foregoing reasons, I recommend the court **GRANT** the Starboard Defendants' motion to dismiss all counts asserted against them, with prejudice. Plaintiff's motion to consolidate is **GRANTED** and an Order of consolidation will be entered.

The Report and Recommendation with respect to the motion to dismiss is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1, and the ruling on the motion to consolidate is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation and Order. Fed. R. Civ. P. 72(a)–(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de

novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: June 2, 2025

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE